MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, L.L.P.
100 N. Broadway, Suite 500
Wichita, KS 67202
316-265-9311
316-265-2955 – fax
tlmann@martinpringle.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ROGER MATHEWS,<br><br>Plaintiff,<br><br>v.<br><br>BUTLER COMMUNITY COLLEGE,<br><br>Defendant. | Case No. 17- |

## **COMPLAINT**

For his cause of action against defendants, plaintiff Roger Mathews states as follows:

### NATURE OF THE CLAIM

1. This action for legal and equitable relief arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

### PARTIES

2. Roger Mathews is a resident of the State of Kansas who resides at 6418 E. 12th Street, Wichita, Kansas 67206.

3. Defendant Butler Community College is an educational institution which is located and may be served at 901 S. Haverhill Road, El Dorado, Kansas 67042.

## JURISDICTION AND VENUE

4. This matter is brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* and the Kansas Age Discrimination in Employment Act, K.S.A. § 44-1111 *et seq.* The Court has jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 626, and 28 U.S.C. § 1367.

5. Defendant has had in excess of twenty employees in twenty or more calendar weeks of the current and preceding calendar years.

6. Defendant is engaged in an industry affecting commerce.

7. Defendant is an "employer," as defined by 29 U.S.C. § 630(b) and K.S.A. § 44-1112(d).

8. The facts and occurrences described herein occurred in this judicial district. Venue is properly laid in this Court, pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE PROCEEDINGS

9. On or about October 24, 2015, plaintiff filed an administrative complaint with the Kansas Human Rights Commission and Equal Employment Opportunity Commission, alleging age discrimination and retaliation for plaintiff's having participated in protected activity.

10. On or about May 28, 2016, plaintiff filed an amended administrative complaint with the Kansas Human Rights Commission and Equal Employment Opportunity Commission, alleging age discrimination and retaliation for plaintiff's having participated in protected activity.

11. On or about April 26, 2017, the Equal Employment Opportunity Commission mailed plaintiff its Dismissal and Notice of Rights.

12. This action has been filed within ninety days of plaintiff's receipt of the right to sue notice.

13. Plaintiff has fully complied with all administrative prerequisites before filing this action.

## FACTS COMMON TO ALL COUNTS

14. At all times material hereto, plaintiff was employed by defendant as an instructor in the Fine Arts and Communication Department. Plaintiff taught a variety of art-related courses, including jewelry design, stained glass design, and ceramics.

15. Plaintiff was born in 1951, and is currently sixty-six years of age.

16. Plaintiff was employed by defendant for more than thirty years.

17. At all times material hereto, plaintiff performed his duties in a satisfactory manner.

18. During his thirty years of employment at Butler Community College, plaintiff received positive evaluations from his Deans, and was never disciplined until he received a Corrective Action Notice on August 14, 2015.

19. The equipment used for plaintiff's art classes included a number of kilns, torches, and other items. Throughout his employment at The Butler Community College, plaintiff also created his own jewelry, ceramics, and other items that were used to advertise defendant's program and were offered for sale in his Wichita art gallery. Plaintiff always purchased his own materials, but, with the full knowledge and consent of the administration, utilized the college's kilns, acetylene torches, and other equipment to

complete those projects, which were often used for demonstration purposes in the classes plaintiff was teaching.

20. On April 23, 2015, plaintiff worked at the college until after 10 p.m. There was still a custodian in the building at the time plaintiff left. As he was leaving, plaintiff noticed all the doors, both to the outside and those in the halls, were locked. On Friday, April 24, 2015, when plaintiff was not present at the school, either one of the kilns in the art area apparently was turned on through some unknown means, or the combustibles stored on top of it were ignited. This kiln was very rarely used, and there were samples of artwork stored in corrugated containers on top of the kiln. The combustible material on top of the kiln reportedly caught fire and was quickly detected and extinguished before any significant damage to the school property occurred. The fire was reportedly detected by one of the Public Safety officers who works at the college. Plaintiff has not been informed as to any investigative efforts to determine the cause of this fire.

21. The morning after the fire, when plaintiff was contacted and came to the scene, the college's Police Chief, Tim Bryan, was present. He told plaintiff that the art room was a "crime scene," and that plaintiff was the "number one suspect." He stated that he was "not going to Mirandize" plaintiff, but that plaintiff should not leave the area. Plaintiff was escorted off campus by one of defendant's security personnel. Officer Bryan then seized thousands of dollars of personal art property that had been three other kilns in the classroom. Those kilns, which were computer-operated, were in a programmed cool-down and annealing process. Upon information and belief, other younger personnel from Butler Community College have never suffered and endured a seizure of personal property of this magnitude.

4

22. Plaintiff was not present at the time the fire started, and indeed was not even in the same county.

23. On April 25, 2015, plaintiff left to attend a previously-scheduled, week-long art workshop in Colorado, which the college had previously approved. On April 26, 2015, plaintiff contacted Vicki Long, head of Human Resources, by email and phone. Ms. Long said that she did not know anything about the "crime" plaintiff was alleged to have committed.

24. When plaintiff returned to work, his Dean told plaintiff to do a "thirty-year" clean up the art area. Plaintiff promptly complied with that request, and the Dean acknowledged that compliance. Defendant did not communicate with plaintiff regarding the fire for several weeks.

25. On or about June 14, 2015, plaintiff met with Dean Moorman and Karla Fisher from defendant's administration. They stated that the administration had consulted with their counsel, and plaintiff was not going to be disciplined by the college for anything related to the fire, which they believed was just an accident. Karla Fisher also said, however, that the college's Chief of Police, Tim Bryan, still could press criminal charges against plaintiff. Ms. Fisher suggested that plaintiff meet with Police Chief Bryan.

26. As directed, plaintiff subsequently met with defendant's Police Chief, Tim Bryan, on June 15, 2015. During that meeting, Chief Bryan stated that he had been investigating the fire, and believed that he had the evidence necessary to prove three separate criminal offenses. First, he stated that he would ask the District Attorney to bring felony theft charges against plaintiff for the use of school property and electricity,

that being the occasional use of kilns, torches, and other school equipment. Chief Bryan estimated the amount of that alleged theft as being in excess of $100,000. Second, he stated that he would ask the Butler County District Attorney to bring misdemeanor charges against plaintiff for maintaining a public nuisance, that being having combustibles stored near the kiln. Third, he stated that he would seek to have plaintiff charged with felony interference with law enforcement. Mr. Bryan noted that he had checked plaintiff's criminal record, and found that plaintiff had only received one traffic ticket. He discussed where plaintiff would likely serve his prison sentence if convicted. He gave plaintiff copies of the Kansas criminal statutes which plaintiff was alleged to have violated, and a Sentencing Grid which showed the sentence ranges for the alleged crimes. These threats by Police Chief Bryan were frightening and intimidating to plaintiff.

27. Chief Bryan stated that he had suspended his investigation, while waiting to see if some "alternative solution" could be reached. He implied that, if plaintiff retired, he might not pursue the criminal charges. He stated that, if this "alternative solution" was not reached, he would have two years to decide whether to pursue misdemeanor criminal charges against plaintiff, and five years for the felony charges. He stated that the prosecution would be embarrassing for plaintiff and his family, and would necessitate testimony by current and former students and co-workers, causing further embarrassment to plaintiff. Chief Bryan threatened that he has a "very high conviction rate."

28. Until the events described herein, plaintiff enjoyed his job, and did not wish to retire.

29. Plaintiff's undersigned attorney complained to the college's attorney, Robert Overman, that plaintiff was in the protected age group, and should not be compelled to retire under threat of criminal prosecution by his employer. Plaintiff refused to retire.

30. On June 23, 2015, plaintiff was informed by a phone call from Vicki Long that the administration had determined that they would recommend to the Board of Trustees that plaintiff's employment should be terminated. This was followed up by a letter dated June 27, 2015.

31. The termination recommendation was made to the Board of Trustees. The Board met in special session first on July 14, but could not reach a decision. The Board met again on July 27, 2015, and rejected the administration's request for plaintiff's termination.

32. After the administration was informed that the Board of Trustees would not authorize plaintiff's termination, plaintiff was given a Corrective Action Notice on August 14, 2105. The Corrective Action Notice indicated that there had been previous notations by the Fire Marshal of infractions in plaintiff's work area. The most recent of these had been in May of 2009 -- more than six years earlier. Upon information and belief, other younger personnel and personnel who had not complained about mistreatment due to their age had also received write-ups from the Fire Marshal, and were not threatened with criminal prosecution nor put on a "zero tolerance" Corrective Action Notice. Upon information and belief, other younger employees have not been disciplined by defendant for Fire Marshal write-ups years after they were issued.

33. One element of the corrective action notice was a weekly inspection of

plaintiff's classroom by the Dean to enforce new standards and policies imposed upon plaintiff that were not existing policies for younger employees. Among these were a daily check sheet for items such as "materials shelved and stored properly, tanks turned off, kilns checked, floor taped off and cleared from non-essential materials, fire exits clear, all machinery turned off, all doors locked, and fire extinguishers clear." The Corrective Action Notice stated there would be "zero tolerance" for infractions. Plaintiff was also instructed there would be a "zero tolerance" for any food or drinks in his classroom, when other younger instructors have open coffee pots and are allowed drinks and food in their classrooms.

34. After plaintiff declined to retire, he was subjected to other mistreatment by defendant. For example, plaintiff was not paid "overload" pay for teaching more than thirty credit hours in a year. Plaintiff filed a grievance, as required by the Agreement Between the Butler Community College and the Butler Community College Education Association. Defendant failed and refused to process the grievance in accordance with the time requirements stated in that agreement. When it did eventually address the grievance, defendant refused to pay the overload pay.

35. Defendant's maintenance personnel refused to do repairs to equipment in plaintiff's work area, stating that Chief Bryan instructed them not to provide that assistance to plaintiff. Upon information and belief, other younger instructors and personnel who have not complained about discriminatory treatment and retaliation have not been deprived of maintenance services. Plaintiff's Dean would not permit plaintiff to order supplies in the quantities that were usual for a semester, instructing plaintiff to just order what he needed at the moment.

36. On December 15, 2015, plaintiff received an e-mail informing him that he would be required to teach Art Appreciation in the Spring semester of 2016. Plaintiff had never previously taught Art Appreciation, and lacked the background and experience necessary to do so effectively. Preparing to teach that subject would require a substantial increase in plaintiff's class preparation time. The requirement was imposed in order to retaliate against plaintiff for having filed a grievance regarding overload pay, and for having filed a prior complaint with the Kansas Human Rights Commission.

37. Because of the treatment plaintiff experienced from defendant and Chief Bryan, and the adverse physical and psychological symptoms resulting from that treatment, plaintiff was constructively discharged.

38. Plaintiff reluctantly provided defendant with notice of his planned retirement on December 16, 2015. Plaintiff had not previously intended to retire at that age, but concluded that he had no other viable option. The early retirement resulted in lost income and reduced Social Security and KPERS contributions for plaintiff. In addition, defendant did not retroactively increase plaintiff's pay when the settled in March of 2016, affecting the instructors' pay during the prior year.

### COUNT I – AGE DISCRIMINATION

39. Plaintiff incorporates herein by reference the above-numbered paragraphs 1 through 38, as though set forth fully herein.

40. Plaintiff is a member of the protected age group, and at all times material hereto, was over age forty.

41. Plaintiff performed his assigned duties in a satisfactory manner.

42. Despite plaintiff's satisfactory performance, defendant willfully discriminated against him by threatening to have him criminally prosecuted for an accidental fire, attempting to have him terminated, placing him on a "zero tolerance" corrective action notice, refusing to pay him overload pay, refusing him maintenance services, changing his job assignment, and constructively discharging him from his employment due to his age, in violation of 29 U.S.C. § 623(a) and the Kansas Age Discrimination in Employment Act, K.S.A. § 44-1111 *et seq.*

43. As the result of defendants' unlawful actions, plaintiff has suffered monetary damages.

44. Defendant's actions were willful and were conducted with disregard of plaintiff's federally protected rights.

WHEREFORE, plaintiff prays for judgment against defendants on Count I of his Complaint, for a finding that he was unlawfully discriminated against due to his age, for an award of back pay and benefits, for an award of front pay to the date of plaintiff's anticipated retirement date, for an award of liquidated damages, equitable relief including reinstatement, for his costs and attorney's fees, and for such other and further relief as the Court finds just and proper.

### COUNT II -- RETALIATION

45. Plaintiff incorporates herein by reference the above-numbered paragraphs 1 through 44, as though set forth fully herein.

46. Plaintiff's complaint to defendant's attorney and plaintiff's complaint to the Kansas Human Rights Commission and the Equal Employment Opportunity

Commission constituted protected activity under the ADEA, 29 U.S.C. § 623(d), and the Kansas Age Discrimination in Employment Act, K.S.A. § 44-1113.

47. Defendant was aware of plaintiff's complaint to its attorney, and the complaints to the Kansas Human Rights Commission and the Equal Employment Opportunity Commission prior to plaintiff's constructive discharge.

48. Because of plaintiff's participation in protected activity, defendants constructively terminated his employment, in violation of 29 U.S.C. § 623(d) and K.S.A. § 44-1113 (a)(5).

49. As the result of defendant's unlawful actions, plaintiff has suffered monetary damages.

50. Defendant's actions were willful and were conducted with disregard of plaintiff's federally protected rights.

51. As a direct and proximate result of defendant's adverse actions and unlawful employment practices, plaintiff has and will continue to suffer damages, including lost wages and benefits, emotional distress, pain and suffering, and inconvenience.

WHEREFORE, plaintiff prays for judgment against defendant on Count II of his Complaint, for a finding that he was unlawfully retaliated against due to his participation in protected activity, for an award of back pay and benefits, for an award of front pay to the date of plaintiff's anticipated retirement date, for an award of liquidated damages, for equitable relief including reinstatement, for his costs and attorney's fees, and for such other and further relief as the Court finds just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby requests a trial by jury.

**DESIGNATION OF PLACE OF TRIAL**

Pursuant to D. Kan. 40.2, plaintiff hereby designates Wichita, Kansas as the place of trial.

Respectfully submitted,

s/ Terry L. Mann
Terry L. Mann (12840)

MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, L.L.P.
100 N. Broadway, Suite 500
Wichita, Kansas 67202
(316) 265-9311
(316) 265-2955 – fax
tlmann@martinpringle.com